IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| UNITED STATES OF AMERICA, *Plaintiff,* | |
|---|---|
| vs. | CRIMINAL NUMBER: 17-595 (DRD) |
| CHRISTIAN MARTINEZ-REYES, *Defendant.* | |

## SENTENCING MEMORANDUM

Christian is described by his family as humble, respectful and as a young man who loves his daughters. Christian's mother, his role model, has noted that he has made mistakes, but he is committed to amending his path and ready to follow the example set by his siblings who all lead law-abiding lives. From the first moments of his arrest, Christian has taken responsibility for his actions and admitted his wrongdoings. He regrets his decisions, but is hopeful for the future, where he knows he can be the loving son, brother, and father his family knows.

### *Christian's childhood.*

Christian was raised by a single mother in a poor home. Christian was the third child born to his mother, Carmen, and his father, Andres. When Christian was just a baby, his father Andres was arrested in a federal bank robbery case and sentenced to a decades-long sentence, which he is still serving stateside. Christian remembers his entire childhood as one without a father. Andres had no communication with his children from, prison, and Christian grew up knowing nothing about his father. Andres remains incarcerated to this day.

Following Andres' incarceration, Carmen was left alone to raise her six children on her own. As a young boy, Christian adored his hardworking mother and all she did for him, but he lacked a father figure in the most important years of his development. He had no relationship with his father whatsoever. Christian often felt ashamed when he had to explain to other kids where his father was. He feels even more ashamed that now his own daughters have to say the same about him.

The loss of a father is a significant experience. Research has shown that adverse childhood experiences, generally, can have "a profound, proportionate, and long-lasting effect" on an individual's emotional state."[1] More specifically, empirical research has indicated that the absence of a father affects educational attainment, social-emotional development, and is associated with an increase of risky behavior.[2] In fact, children raised by single mothers are three times more likely to be incarcerated as compared to children raised by intact families.[3] The psychological harms of father absence experienced during childhood persist throughout the life course."[4] Perhaps in part because, as indicated by new scientific research, traumatic childhood events like the death of a father have the capacity to change the biology of a child.[5]

---

[1] Vincent J. Felitti & Robert F. Anda, *The Relationship of Adverse Childhood Experiences to Adult Medical Disease, Psychiatric Disorders, and Sexual Behavior: Implications for Healthcare* Seven, in *The Hidden Epidemic: The Impact of Early Life Trauma* (2009) (R. Lanius and E. Vermetten, eds.).

[2] Sarah McLanahan, Laura Tach, and Daniel Schneider *The Causal Effects of Father Absence*, Ann. Rev. Sociol. 2013 Jul: 39: 399-427.

[3] Cynthia Harper and Sara McLanahan, *Father Absence and Youth Incarceration, Center for Research on Child Wellbeing, Working Paper # 99-03* (1999).

[4] Colter et. al., *Father loss and Child Telomere Length*, Pediatrics July 2017

[5] *See* Colter et. al., *Father loss and Child Telomere Length*, Pediatrics July 2017 (finding children with father loss had significantly shorter telomeres, and those with the death of a father showed the largest effect).

Notwithstanding the absence of his father, Carmen was the strength for her family. She served as an example to her children by working long hours as a cleaning and maintenance employee. Despite living in the Juana Matos Housing Project, surrounded by unemployment and crime, Carmen raised her six children to be good, contributive members of society. In fact, to this day, Christian describes his mother as a "caring and nurturing parent, who has loved him unconditionally" and "as the best individual in the world." DE # 36, ¶ 43. Carmen's example and strength ran true: to this day, Christian's five siblings are all gainfully employed, with the exception of Tanisha, who just had her first child.

Christian and his siblings grew up in Juana Matos PHP. As Christian has lived there his entire life, from a young age he has been acutely aware of the problems his community faces. In his pre-sentence interview, Christian explained that his community is a tough place, and as a child, "he was exposed to crime and violence." *Id.* at ¶ 44. The troublesome environment and crime that plagued Juana Matos made its way into Christian's life. With his mother working long hours and his father incarcerated, Christian did not have anyone pushing him to stay in school. As he was already a special education student since fourth grade, school had always been hard for him. Unable to concentrate and with no encouragement at home, Christian dropped out of school in eighth grade.

### *Becoming a father: Christian's adolescence and arrests.*

After he left school, Christian began to search for work, so he could provide for himself and help his mother. Christian's first job was in construction working with a family member doing contracting work at small jobs. He learned multiple construction skills on these jobs. Following this contracting work, Christian earned a full-time salaried job in construction at Ciudadela in Santurce, working on the new buildings' construction.

This job lasted over a year. Christian explains that this job was the one he most enjoyed, because it was with a legitimate company working on a project. When the Ciudadela buildings were completed, the job ended.

Additionally, in spite of having no technical training, Christian also loved to tinker with electrical appliances and computers. He taught himself how to fix TV antennae, and he often worked on his neighbor and friends' televisions for a small fee. Christian would love to study this technical work further and develop a small business or work for a company dedicated to these practices.

During this time, in addition to beginning his first jobs, these adolescent years were of the most important in Christian's life because he became a father. He and his long-term girlfriend, Nasha, had their first daughter Aneishka and shortly after, their second daughter Soliany. Christian adores his daughters. He explains that he sees them every other weekend when they come to his home and stay with him. During these weekends, they watch movies and cartoons, go to the beach, or go to the park to play.

### *The decision to possess a firearm.*

Despite his efforts working and as a young-father, Christian made a terrible decision—to possess a firearm. Christian always felt insecure due to the high rate of crime in his neighborhood. He got a gun, something he should have never done. He knew he should not possess a firearm illegally, even if he felt he needed one in his neighborhood. He knows that is not an excuse. So, as he did in the past, Christian immediately took responsibility for his actions. He told the arresting officers that the gun was his. He told the federal agents the gun was his. He plead guilty. Christian knows he must be accountable for his actions.

### ***Christian's family supports him.***

When Christian was arrested, his family was upset with him. They went from living with Christian and seeing him every day at home, to visiting him twice a month at MDC Guaynabo with only a few precious hours together. They were furious that Christian acted this way, when he knew he should not have. Nonetheless, Christian's family has stood by his side during his case. They are aware that Christian has committed errors, but they are confident in his ability to rehabilitate. Christian explains that his siblings are his close friends. DE # 36, ¶ 47. Christian feels extremely lucky his family continues support him.

A hardworking, law-abiding and loving family to return to upon release is the key to Christian's rehabilitation. "The single best predictor of successful release from prison is whether the former inmate has a family relationship to which he can return. Studies have shown that prisoners who maintain family ties during imprisonment are less likely to violate parole or commit future crimes after their release than prisoners without such ties."[6] Christian luckily counts himself as part of this group.

### ***Christian is a first offender.***

Christian is a first offender, and this will be his first conviction. Under the current U.S. Sentencing Guidelines Manual, offenders with minimal or no criminal history are classified into Criminal History Category I. Empirical data and findings from the United States Sentencing Commission relevant to this Court's considerations at sentencing, indicates that first offenders like Christian present a very low risk of future rearrest, reconviction, or reincarceration.

---

[6] Solangel Maldonado, *Recidivism and Parental Engagement*, 40 Fam. L.Q. 191, 196-197 (2006).

Importantly in Christian's case, is this is his first time being incarcerated. While the Court may be concerned about Christian's prior arrests, what is different about this case is that this is his first time in prison. This case opened Christian's eyes to the harsh realities of incarceration and the consequences of crime. He has become incredibly remorseful of his actions realizing how foolish he was, not only because they resulted in his loss of liberty, but because of any impact he had on his family and his daughters. Particularly painful is that this is the first time Christian has spent extended time away from his daughters. Embarrassedly, he explains that he has had a harsh wake-up call that he is acting like his father, Andres. In fact, both Anders and Christian are sitting in federal prison. Christian's entire childhood was plagued by questions and doubts about his father, and he now feels ashamed that his daughters may be asking these same questions about him. He does not want them to grow up as he did, with their dad behind bars. Spending time for the first time in his life at MDC Guaynabo and in Miami FDC has been significant deterrence for Christian.

Demonstrating this path to maturity, Christian accepted responsibility for the offense from the moment he was arrested. He has not impeded or obstructed justice. He now knows what incarceration is like and never wants to repeat this foolish decision making again. This arrest and time in prison have been a huge deterrence for Christian.

***A lengthy sentence of incarceration will not increase the deterrent effect.***

Christian is cognizant of the fact that the Court will sentence him to a period of incarceration. However, the defense submits that adding time to an already long sentence will not increase the deterrent effect. Generally, research indicates that incarceration is

not an effective means of deterrence.[7] Furthermore, "[e]empirical studies have shown that longer sentences have minimal or no benefit on whether offenders or potential offenders commit crimes."[8]

An opinion authored by Judge Weinstein in the Eastern District of New York considered the expert testimony of Dr. Jeffrey Fagan, a Professor of Law and Epidemiology and leader in the fields of criminology and mental health. After conducting empirical research, Dr. Fagan concluded, "the deterrent effect of criminal sanctions for gun violence are specific to the risks of detection, not the severity of punishments."[9] Judge Weinstein explained, citing the expert, that for gun crimes there "little reliable evidence" that increasing the length of a sentence increases the deterrent effect.[10]

The 3553(a) factors ask the Court to consider community deterrence in its sentencing decision. Instead, the defense submits there are different types of deterrence other than a longer prison sentence, a sentence that members of his community will likely never hear about. Rather than community deterrence, deterrence can be personal – such as deterrence not to be away from his daughters or family, the inability to earn a living, or the loss of liberty. Chrisitian has also been deterred from future possession of a firearm because of the months he has spent in prison, the first time he has been away from his family for months.

---

[7] Five Things About Deterrence, *available at*, http://www.nij.gov/five-things/pages/deterrence.aspx; Daniel S. Nagin, *Deterrence in the Twenty-First Century*, 42 Crime & Just. 199, 201 (2013).
[8] Oliver Roeder, Lauren Brooke Eisen, Julia Bowling, Brennan Center for Justice, *What Caused the Crime Decline?*, at 26, 2015, (*available at:* https://www.brennancenter.org/sites/default/files/analysis/What_Caused_The_Crime_Decline.pdf).
[9] *United States v. Lawrence,* --- F. Supp. 3d. ---, 2017 WL 2462530, at *2 (June 6, 2017).
[10] *Id.* at *3.

Deterrence is also federal supervision. Federal supervision is nothing to be taken lightly, and it will be an additional term of compliance on top of the time spent in BOP. Supervised release will allow the Court, through the United States Probation Office, to ensure that Christian continues the positive rehabilitation efforts he has thus begun, and ensure nothing like this act ever repeats itself. Moreover, supervision will help Christian acquire the tools to reacquire gainful employment, or perhaps study computers, as he has expressed interest in doing.

Christian makes no excuses for his actions, but he wants to assure the Court that he is ready to do things right, and he wants the Court to know that he will turn those words into actions – by returning to the free community and engaging in gainful employment such as construction or electrical work. Christian has a future: he has his daughters, a mother, and five siblings, all waiting for him.

Despite his errors, his family has stood by him, and continues to support him. They provide the example of hardworking citizens that Christian must now seek to embody. For all the reasons stated above, a sentence of the higher-end contemplated by the plea agreement, followed by a term of supervised release, is sufficient but not greater than necessary to serve the goals of sentencing.

**WHEREFORE**, it is respectfully requested that this Honorable Court take notice of this memorandum and sentence Mr. Martínez accordingly.

I HEREBY CERTIFY that on this date I electronically filed the present notice with the Clerk of Court using the CM/ECF system which will send notification of such filing to the parties of record.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 18th day of July, 2018.

**ERIC ALEXANDER VOS**
Chief Defender
District of Puerto Rico

***S/Jessica E. Earl***
Jessica E. Earl
Research and Writing Specialist
USDC-PR No. 302613
241 F.D. Roosevelt Ave.
Hato Rey, P.R. 00918-2441
(787) 281-4922/ Fax (787) 281-4899
E-mail: Jessica_Earl@fd.org